

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

May 1, 2024

**BY ECF AND EMAIL**

The Honorable Loretta A. Preska
United States District Court Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

    Re: *United States v. Aboudulaye Keita*, S1 22 Cr. 435 (LAP)

Dear Judge Preska:

    The Government respectfully submits this letter in advance of the May 8, 2024 sentencing of the defendant Aboudulaye Keita, on his conviction for firearms trafficking in violation of Title 18, United States Code, Sections 371 and 922(a)(1)(A). For the reasons set forth below, the Government respectfully submits that a sentence within the applicable range of 30 to 37 months' imprisonment calculated under the U.S. Sentencing Guidelines (USSG or the "Guidelines") would be sufficient but not greater than necessary to achieve the purposes of sentencing.

**I. Offense Conduct**

    Keita is responsible for arranging for numerous straw purchasers to buy firearms from gun shops in and around Little Rock, Arkansas, for personally running the firearms from Arkansas to New York City, including by bus, and for selling the firearms to individuals who used them for violence. Presentence Investigation Report (PSR) ¶¶ 12, 15. Specifically, from at least October 2020 through at least December 2021, Keita obtained firearms from at least five straw purchasers—Marquise DeShaun Austin, Cedric Christopher, Jailyn Hilliard, Aboubacar Coulibaly (who in turn arranged to purchase the guns through another charged co-defendant, Keshaun Johnson), and at least one uncharged individual. Of the firearms Keita obtained from these known straw purchasers, New York City Police Department (NYPD) reports show that, to date, 12 firearms have been recovered in the Bronx and Brooklyn. Lead information collected and maintained by the National Integrated Ballistic Information Network (NIBIN) show that casings from five of these 12 firearms were recovered after their use in at least 12 shootings.

    Significant evidence shows that Keita played a direct role in virtually all aspects of the trafficking scheme.

    First, Keita's text messages, call history, and CashApp mobile payment records, combined with firearms transaction records, show that Keita guided straw purchasers' gun selections at

federally licensed gun shops ("FFLs") and arranged the sale of those guns to individuals in New York City who used the guns to commit crimes.

For instance, on May 22, 2021, in text messages, Keita instructed Austin to buy three particular types of firearms from an Arkansas FFL.

AUSTIN: We gotta go to gunstore before they close at 5
KEITA: I know I'm waiting on you.
KEITA: Get two
KEITA: And the 380
KEITA: Get 2 9
KEITA: And the 380

Firearms transaction records show that, on that very day, Austin purchased three firearms that matched Keita's instructions: two Taurus 9-millimeter semiautomatic pistols (the "2 9") and one Ruger -380-caliber semiautomatic pistol ("the 380"). A few days later, someone named "Sandou Cisse" paid Keita $250 through CashApp. Only one month later, on June 30, 2021, NYPD recovered one of the three firearms from the illegal possession of an individual with that name, Sandou Cisse, in the Bronx after the firearm was used to shoot a person. The police report shows that the victim required hospitalization.

Second, the evidence shows that Keita personally transported numerous firearms to New York City, including by public transportation. Shortly before Austin's arrest, Austin told agents from the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") that Keita transported firearms by bus from Memphis to New York City. Keita's bus records confirm that this is the route Keita took, often between the date specific firearms were purchased in Arkansas and the date they were recovered by law enforcement in New York City. For example, on May 1, 2021, an uncharged individual bought at least one firearm for Keita at an Arkansas FFL (and phone records show the individual spoke to Keita the same day). The very next day, on May 2, 2021, Keita took a bus from Memphis to New York City, where the firearm was recovered a few months later.

Third, Keita continued bringing guns through the Arkansas-to-New York pipeline after those guns were used in shootings in New York City. For instance, police records show that six days after the May 1, 2021 gun purchase described above and five days after Keita brought the gun to New York by bus, that gun was used in a shooting. Further, on the very same day as the shooting, May 7, 2021, the straw purchaser reported the gun stolen, though he later admitted to the ATF that in fact it was not stolen but had been purchased for someone named "Abdule." In short, word got out that the gun had been used in a shooting, traveling all the way to the straw purchaser in Arkansas who had given the gun to Keita. Casings left behind at other crime scenes show that by the time the gun was finally recovered from the illegal possession of an individual in the Bronx only a few months later, on September 22, 2021, the gun had been used in four total shootings in New York City.

Fourth, Keita obtained firearms in Arkansas and transported them to buyers in New York City repeatedly, over the course of many months. For instance, the phone of another defendant, Aboubacar Coulibaly, contained two simultaneous December 29, 2021 text threads in which (i)

Keita instructed Coulibaly to contact a particular Arkansas FFL to purchase two guns, and (ii) Coulibaly instructed co-defendant Johnson to purchase the guns. Firearms transactions records shows Johnson purchased the two guns as instructed on that very day. Police reports and trace analysis show that one firearm was used in a Bronx shooting and was then recovered in the Bronx from Adama Ganemtore. Ganemtore, in turn, was no stranger to Keita: phone records show that Ganemtore was in direct communication with Keita and a phone subscribed in the name of one of Keita's family members before NYPD recovered the gun from Ganemtore.[1]

Similarly, firearms transaction records show that on February 26, 2021, another charged straw purchaser, Christopher, bought three semiautomatic pistols—all 9-milimeter pistols—from an Arkansas FFL. The very same day, Keita paid Christopher $400 through CashApp. Approximately six months later, NYPD recovered one of these firearms in the Bronx. And on December 30, 2021, a straw purchaser and Keita persuaded his then-romantic partner, Hilliard, to buy three revolvers from an Arkansas FFL. About three months later, on March 25, 2022, NYPD recovered one of the firearms in the Bronx from the illegal possession of an individual named Cekou Cisse.

## II. Keita's Guilty Plea and Applicable Guidelines Range

### A. The Plea Agreement

On August 10, 2022, Keita was charged in a three-count Indictment with conspiracy to engage in gun trafficking, in violation of 18 U.S.C. §§ 371 and 922(a)(1)(A); substantive gun trafficking, in violation of 18 U.S.C. §§ 922(a)(1)(A), 924(a)(1), and 2, and interstate to acquire a firearm in another state, in violation of 18 U.S.C. §924(n) and 2.

On February 1, 2024, Keita pleaded guilty to Count One, pursuant to a plea agreement (the "Plea Agreement") PSR ¶ 6. The Plea Agreement between the parties stipulated to a base offense level of 14 because the defendant was a prohibited person at the time the defendant committed the instant offense (specifically, a person who is under indictment for a crime punishable by imprisonment for a term exceeding one year). *Id.* ¶ 6(d). Factoring in two four-level enhancements for engaging in an offense involving between eight and 24 firearms and engaging in firearm trafficking, and a three-level reduction for acceptance of responsibility, the total offense level is 19. *Id.* ¶ 6(e)-(h). The parties agreed that the defendant had zero criminal history points. *Id.* ¶ 6(i). The resulting Guidelines range (the "Stipulated Guidelines Range") is 30 to 37 months' imprisonment, with a mandatory minimum sentence of 60 months. *Id.* ¶ 6(k).

---

[1] The second firearm was recovered in Arkansas from a car in which Coulibaly was riding with Keita's brother.

### B.  Probation's Report and Recommendation

Probation's Guidelines calculation matches the Plea Agreement. Probation recommends a Guidelines sentence of 30 months' imprisonment, followed by three years of supervised release. *Id.* at 25.

As Probation notes, the defendant has been detained at the Metropolitan Detention Center – Brooklyn (MDC) since his arrest in Arkansas and transfer to New York City in December 2022. Since the start of his detention, he has been disciplined three times, twice for refusing to obey an order and/or being in an unauthorized area and once for threatening bodily harm and refusing to obey an order. *Id.* ¶ 8.

## III. Discussion

### A.  Applicable Law

The Guidelines provide strong guidance to sentencing courts after *United States v. Booker*, 543 U.S. 220 (2005). Because the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall v. United States*, 552 U.S. 38, 46 (2007), district courts must treat the Guidelines as the "starting point and the initial benchmark" in sentencing proceedings. *Id.* at 49. The Guidelines are not merely a "body of casual advice." *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc) (internal quotation marks omitted).

Following the calculation of the applicable Guidelines range, the Court must consider the factors outlined in 18 U.S.C. § 3553(a), which provides that a sentencing "court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection," and then sets forth seven specific considerations:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established [in the Guidelines];

(5) any pertinent policy statement [issued by the Sentencing Commission];

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). The Guidelines' relevance throughout the sentencing process stems in part from the fact that, while they are advisory, "the sentencing statutes envision both the sentencing judge and the Commission as carrying out the same basic § 3553(a) objectives." *Rita v. United States*, 551 U.S. 338, 348 (2007). To the extent a court imposes a sentence outside the range recommended by the Guidelines, that court must "consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Cavera*, 550 F.3d at 189 (quoting *Gall*, 552 U.S. at 46).

### B.   The Court Should Impose a Guidelines Sentence

Aboudulaye Keita played multiple crucial roles in the charged conspiracy and is responsible for not only bringing firearms from Arkansas to New York City, but also repeatedly putting them into the hands of people intent on harming others and endangering the public. Government respectfully submits that a Guidelines sentence would be sufficient, but not greater than necessary, to reflect the nature and seriousness of the offense; to account for the history and characteristics of the defendant; to promote respect for the law; to provide just punishment for the offense; and to afford adequate deterrence to criminal conduct, as required by 18 U.S.C. § 3553(a).

#### 1.   The Nature and Seriousness of the Offense and the History and Characteristics of the Defendant

The seriousness of the defendant's conduct supports a substantial term of imprisonment. The totality of the evidence shows that Keita was far from a mere recipient or courier of firearms. Unlike any of the other charged co-conspirators, most of whom played discrete roles within the conspiracy, Keita played a variety of roles that placed him at the scheme's very center, from instructing and paying straw purchasers, to transporting firearms by bus, to communicating with some of the very individuals who were found to have illegally used or been in possession of the firearms in New York City.

He did all this repeatedly over the course of about two years, notwithstanding the fact that he knew, or should have known, of the violence he was facilitating. Indeed, he continued obtaining and transporting guns despite multiple instances in which the firearms he brought to New York were used in shootings and/or recovered by the NYPD.

Keita's decision to knowingly and repeatedly endanger everyday New Yorkers, for no apparent reason other than the desire to profit, makes it difficult to overstate the seriousness of his offense conduct. It is conduct deserving of a substantially longer term of imprisonment than the below-Guidelines sentence of 24 months urged by the defense.

The defense submission states that the defendant did not "fathom that the guns might be used to hurt someone" because "Mr. Keita himself frequently used guns as accessories for his music videos, and he was used to seeing them around." That is inconsistent with the sheer length of Keita's offense conduct and the violent ends to which his guns were used. During the conspiracy period, at least five of the firearms he transported to New York City were used in 12 shootings,

and some of the 12 total guns recovered in New York City were specifically recovered from individuals in direct phone contact with Keita.

Keita's history and circumstances also weigh in favor of a substantial sentence. Although the defense submission emphasizes Keita's lack of prior convictions, Keita committed his gun trafficking offense notwithstanding the fact he was at the time under indictment by the state of Arkansas after a high-speed police chase, which ended with him crashing a car that had been stolen during a violent carjacking from a victim who was struck on the head with a gun. Although the carjacking was never solved, a gun was indeed recovered from Keita's car, and firearms transaction records show it was purchased by one of the straw purchasers in this case, Austin, in August 2020. This disturbing episode is relevant background in assessing Keita's dangerousness and demonstrated disrespect for the law.

2. **The Need to Promote Respect for the Law, Provide Just Punishment, and Afford Adequate Deterrence**

A substantial sentence is needed to promote respect for the law, provide just punishment, and afford adequate deterrence in this case, particularly given Keita's centrality to the conspiracy and the numerous pieces of evidence that together show that Keita knew, or should have known, that the firearms he was piping into New York City were being used for violence, not music videos.

As detailed above, Keita was crucial to virtually every aspect of the charged scheme and was, in many respects, the primary facilitator at both ends of the gun pipeline. He was actively engaged in choosing, buying, transporting, and selling the guns. He connected sellers to buyers. He connected Arkansas to New York. In light of this multifaceted role and the deliberate nature of Keita's conduct, a below-Guidelines sentence is not warranted.

As to the circumstances that show Keita knew, or should have known, how his guns were being used, it bears noting that the 12 guns he trafficked to New York, including the five guns that were used in 12 shootings in the Bronx and Harlem, were purchased between September 3, 2020 and December 30, 2021. In that time period alone, NYPD recovered three of the five guns—that is, after they had already been used in shootings. Nonetheless, Keita continued trafficking firearms. Indeed, one of the firearms was first used in a shooting only six days after Keita arranged its purchase, by an uncharged individual in Arkansas. The fact that this firearm was reported stolen the same day as the shooting strongly suggests that some efforts were immediately made to obscure how the gun had made its way from Arkansas to New York. Yet later that very month, on May 21, 2021 and May 25, 2021, the straw purchaser Austin purchased at least three more guns that Keita transported to New York; two of those firearms were used in three shootings and recovered by NYPD in June and November 2021, respectively. As noted above, one of these guns were recovered from Sandou Cisse, who personally paid Keita for the gun through CashApp. All of this evidence undermines the notion that Keita remained ignorant about how his guns were being used on the streets of New York City and the harms he brought upon others.

A Guidelines sentence is appropriate to justly punish the defendant and deter him from committing further crimes, while still achieving the stated objectives under Section 3553(a). Such

a sentence is also needed to send a message to anyone who might consider trafficking guns across state lines, without regard for how their conduct endangers the public: this is a serious crime, with serious consequences.

### C. Conclusion

For the reasons set forth above, the Government believes a Guidelines sentence of at least 30 months and as much as 37 months would be sufficient but not greater than necessary in this case.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney


By: __/s/_____
    Jane Y. Chong
    Assistant United States Attorney
    (212) 637-2263